THE CASCADE.

THE UNADILLA.

(District Court, N. D. New York. March 23, 1896.)

COLLISION—TOW WITH VESSEL AT DOCK—SUDDEN SHEER.

A tug was mooring a tow at Ryan's Elevator, in Black Rock harbor, Niagara river, by dropping her down stern foremost on a hawser, in the

usual manner, when the tow suddenly sheered to port, towards a vessel lying at the dock. To overcome the sheer the tug went promptly to starboard, pulling strong, when the chock on the tow gave way, allowing her to drift to port and strike the other vessel. *Held*, that the proximate cause of the collision was the insufficiency of the chock, and the tow was solely liable.

This was a libel for collision filed against the tug Cascade and the schooner Unadilla to recover damages done by the Unadilla, while in charge of the tug, to the schooner M. J. Cummings.

On the 3d of November, 1893, the schooner M. J. Cummings was moored at Ryan's Elevator in Black Rock harbor, on the Niagara river. Just below where she lay there was, in 1893, a shoal extending for several hundred feet into the river so that a towed vessel could not land at that point in the ordinary way, but was dropped into the desired position at the dock by the force of the current, the tug being headed up stream and steadying the tow while this operation was going on. On the day in question the schooner Unadilla, in tow of the tug Cascade, started from the Buffalo breakwater destined for a position at Ryan's Elevator alongside of the schooner Cummings. The Cascade is one of the largest and most powerful tugs in the harbor of Buffalo. They proceeded in the usual manner down the river until they reached a point about opposite Ferry street, when the tug winded around in the customary way and headed up stream. The schooner was then from 80 to 200 feet from the dock and abreast of, or a little above, the Cummings. After the tug and tow had straightened up the line was shortened about 100 feet leaving from 100 to 150 feet of line between the two. They were then in a proper position to commence the operation of landing. This is accomplished by turning the bow of the tow slightly to port when the force of the current swings the stern in the same direction. The operation is repeated until the landing is accomplished. The office of the tug is to hold the tow against the current. On the day in question this operation had proceeded for some little time when the Unadilla took a sudden sheer to port. The moment the sheer was discovered the tug, by going promptly to starboard, endeavored to overcome it. She was pulling strong with this object in view when the chock, which held the hawser on the Unadilla, suddenly pulled out with a loud report and dropped into the river. The hawser thus subjected to a sudden and violent strain parted, and the Unadilla drifted to port and struck the starboard bow of the Cummings a raking blow which caused the injury complained of. The Unadilla insists that the accident was occasioned by the negligence of the tug in permitting her to drift onto the shoal so that her heel caught and acted as a pivot on which she swung to port. The tug, on the contrary, insists that the accident was due in the first instance to the bad steering of the schooner which produced the sheer, but that the proximate cause was the breaking of the chock which caused the line to part so that the tug lost all control of the tow.

George S. Potter, for libelant.
George Clinton, for the Cascade.
Harvey L. Brown, for the Unadilla.

COXE, District Judge (after stating the facts). The discussion at the argument resulted in establishing the following propositions: First. The libelant was free from fault. Second. The accident was not inevitable. Third. It was not due to an inscrutable fault. Fourth. It was due to the negligence of the Cascade, or the Unadilla, or both. Fifth. If the chock had not broken the collision would have been avoided, or, at least, the force of the blow would have been greatly diminished.

The first four of these propositions are conceded. The fifth is established by a preponderance of evidence. There can be little

doubt that the breaking of the chock was the proximate cause of the accident. Had the chock held the injury would have been averted altogether. The vessels might have come together, but not with sufficient force to cause damage.

It is very difficult to determine, from the testimony, just what caused the sheer in the first instance. It might have been produced either by the heel of the schooner being caught on the edge of the shoal, or by the bad steering of her helmsman. The helmsman was not produced and it would seem that no very diligent effort was made upon the part of the Unadilla to secure his presence. Were it necessary to find definitely upon this proposition I am inclined to think the weight of evidence, direct and presumptive, tends to the conclusion that it was the helmsman's action in swinging the schooner's bow too far to port which caused the commencement of the sheer. No other cause has been established. The evidence fails to show fault upon the part of the Cascade. The master was a competent pilot. He knew the river at Black Rock harbor well. He had landed a large number of vessels at Ryan's dock and always successfully. The course pursued by him was the usual one. He did no negligent act, he omitted nothing which care and prudence dictated. Whether it was prudent or otherwise to shorten line after rounding up it is unnecessary to determine, for the reason that it is clearly proved that the sheer commenced some time after the line was taken in and was in no wise attributable to that maneuver. Although there is considerable dispute upon the testimony as to the position of the Unadilla and the location of the shoal I am convinced that the schooner's heel was not caught upon the shoal. The evidence upon this point is certainly conflicting, but even if it be conceded that it is impossible to say with certainty what caused the sheer, it does not aid the Unadilla when a plain fault, such as the giving way of the chock, is attributable to her. The testimony is that sheers of this kind are very apt to occur at the point in question. There is nothing particularly dangerous about such a situation; if the tackle holds the tug has no difficulty in controlling the movements of the schooner. The Unadilla was required to furnish suitable and sufficient means to enable the tug to tow her safely, and if the accident happened by reason of her failure in this regard she alone is responsible. The chock gave way in a manner which indicates either that it was improperly constructed or else was out of repair from long use. The monkey rail, which was of oak, did not break or give way, indicating that the strain was not an unusual one. The bolts simply pulled out, and the whole structure was precipitated into the river, and, of course, was not produced in court. With such a plain and undisputed fault before the court it is unnecessary to search further for the cause of the accident. The insufficient chock was not the fault of the tug, but of the schooner. The libelant is entitled to a decree with costs against the Unadilla, and a reference to compute the amount. As to the Cascade the libel is dismissed, without costs.